UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Hutchinson Technology Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Suncall Corporation,<br><br>Defendant. | Case No. 21-cv-2618 (SRN/DLM)<br><br>SEALED ORDER ON MOTIONS TO COMPEL |

This matter came before the undersigned on December 8, 2023, for a hearing on the parties' motions to compel discovery (Docs. 172 (Plaintiff's Motion), 180 (Defendant's motion).) Abigail Reardon and Sam Deka presented oral argument on behalf of Plaintiff. Nick Saros, Erica Sedler, and Benjamin Bradford presented argument on behalf of Defendant. The Court, having considered the arguments and submissions of the parties, denies both motions for the reasons that follow.

## BACKGROUND

Plaintiff Hutchinson Technology Incorporated ("HTI") and Defendant Suncall Corporation ("Suncall") are business competitors in the field of manufacturing hard disk drive components. (Doc. 8 ¶¶ 1, 2, 4, 9–10.) Both parties make and sell suspension assemblies to other companies, including Western Digital Corporation ("WD"). (Doc. 47 ¶ 9.) In December of 2021, HTI filed this lawsuit alleging Suncall infringed on 16 of its

patents. (*See generally* Doc. 8.) Suncall filed an answer denying HTI's claims and asserting counterclaims that HTI infringed on two of its patents. (*See generally* Doc. 47.)[1]

The parties have been engaged in fact discovery for over a year and a half, with that discovery period having closed on December 15, 2023. (Doc. 52.) On November 27, 2023, HTI filed a motion to compel all communications between Suncall and WD related to this litigation. (Docs. 172 (Motion), 174 (Memorandum in Support).) Suncall responded that it has produced all such communications, save for those between Suncall's outside counsel and WD's outside counsel, which Suncall asserts are attorney-client privileged by virtue of the common interest doctrine. (Doc. 190.)

The same day that HTI filed its motion to compel, Suncall filed its own motion to compel production of three categories of information from HTI: (1) all suspension products HTI has sold from 2004 to present that it contends are covered by its asserted patents; (2) for all asserted patents, suspension designs that existed two years before the patent priority date, along with which limitations in the asserted patents were not within these prior designs; and (3) all information that HTI provided to WD under a 2011 Supply Assurance Agreement between those two parties. (Docs. 180 (Motion), 181 (Memorandum in Support). HTI responded in turn that (1) it has already answered which of its products are covered by the asserted patents for damages purposes, and requiring it to conduct a claim-by-claim analysis of each product beyond that would be unduly burdensome given the

---

[1] Subsequently the parties agreed to narrow their disputes by withdrawing claims related to some of each other's patents, leading to dismissal of claims related to six of HTI's patents and one of Suncall's patents. (Docs. 64, 82 (Stipulations), 85 (Order).)

2

hundreds of products it has produced over the relevant time period; (2) it would be disproportionately burdensome for HTI to identify all prior suspension designs for the asserted patents, as well as improvements on those designs, since that information is available to Suncall in the asserted patents themselves and publicly-available prior art; and (3) it has already produced all agreements between HTI and WD from 2004 to present, as well as all communications between HTI and WD, and advised Suncall that none appear to relate to the patents in suit. (Doc. 195.)

## ANALYSIS

Federal Rule of Civil Procedure 26 entitles parties to liberal discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts construe the scope of Rule 26(b)(1) broadly, *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)), but the scope of discovery includes only what is relevant to the actual claims or defenses that are at issue, *see Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). It is the party that seeks discovery who must make a threshold showing that the information sought is relevant to the claims or defenses in the case. *Sherman*, 338 F.R.D. at 252 (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). If that occurs, then "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-cv-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)).

Beyond this, Rule 26 requires that information sought in discovery also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* A court may "find that a request on its face is not proportional to the needs of the case, given the relevance of the requested discovery." *Stan Koch & Sons Trucking, Inc. v. Am. Interstate Ins. Co.*, No. 18-cv-2945 (PJS/HB), 2020 WL 2111349, at *3 (D. Minn. May 4, 2020) (quoting *Klein v. Affiliated Grp., Inc.*, No. 18-cv-0949 (DWF/ECW), 2019 WL 1307884, at *7 n.9 (D. Minn. Mar. 22, 2019)).

I.   **HTI'S MOTION TO COMPEL**

A.   **Communications between counsel for Suncall and counsel for WD are protected from disclosure by the common interest doctrine.**

According to Suncall, it "has produced all of its responsive, non-privileged communications with [WD]." (Doc. 190 at 5;[2] Doc. 191 ¶ 2.) It has withheld, however, communications between counsel for Suncall and counsel for WD in connection with this case, and which post-date filing of this lawsuit. (Doc. 191 ¶ 3.) Suncall asserts that these communications were made pursuant to a common interest agreement between itself and

---

[2] Pagination throughout this Order will refer to the page number assigned by the Court's electronic filing system at the top right corner of each document.

4

WD, and were made with "a shared understanding that they are protected from disclosure by the common interest doctrine." (Doc. 191 ¶ 5.)

The common interest doctrine is not itself a privilege against disclosure, but rather "expands the coverage of the attorney-client privilege" to some circumstances where distinct parties represented by their own lawyers share information on a related matter. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997). The "doctrine softens the ordinary requirement that lawyer-client communications must be made in confidence in order to be protected by the privilege," since sharing information with a commonly-interested third party does not waive the privilege. *Id.* (citations omitted). Nonetheless, privileges are narrowly construed because they obstruct the truth-finding process. *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, No. 14-cv-3103 (SRN/FLN), 2016 WL 11783857, at *5 (D. Minn. Mar. 29, 2016). As such, a party asserting that attorney-client privilege applies to information shared with third parties must put forth evidence that they shared an actual common interest with that third party. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 922.

The precise nature of the interest that qualifies for common-interest protection in this district has been somewhat provocative. *See, e.g.*, *Williams v. BHI Energy I Power Servs. LLC*, No. 21-cv-1186 (KMM/DTS), 2022 WL 17485550, at *3 (D. Minn. Dec. 7, 2022) ("This Court is aware that within this district, there is a split in how broadly to interpret the common interest doctrine and whether to limit it to a common legal interest.") (citations omitted). As noted in *Williams*, some courts appear to take the view that the interest must be *legal* in nature. *Id.* (collecting cases); *accord Energy Pol'y Advocs. v.*

5

*Ellison*, 980 N.W.2d 146, 153 (Minn. 2022) (holding that, as a matter of Minnesota law, party asserting common-interest protection must show a common *legal* interest). But the Eighth Circuit has said otherwise, quoting commentary to a draft (since published) of the Restatement of the Law Governing Lawyers for the proposition that the shared interest could be "either legal, factual, or strategic in nature," a much broader formulation.[3] *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 922 (quoting Restatement (Third) of the Law Governing Lawyers § 126, cmt. e); *see also NPG Recs., Inc. v. Roc Nation*, No. 16-cv-3909 (JRT/FLN), 2018 WL 6437103, at *4 (D. Minn. Feb. 9, 2018) (analyzing claim of common interest for legal, factual, or strategic alignment).

At the hearing on this matter, counsel for HTI characterized the Restatement as "aspirational." (Doc. 226 at 8:22–9:3.) While that may be true in some respects, as it relates to the common interest doctrine, it is the law of the Circuit: the Restatement's construction of the doctrine, as well as its commentary, framed the Eighth Circuit's analysis in *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 922–93, and has been relied upon heavily both within this district, *see, e.g.*, *Transuinon Intel. LLC v. SearchAmerica Inc.*, No. 11-cv-1075 (PJS/FLN), 2013 WL 12145008, at *3 (D. Minn. Nov. 14, 2013) (rejecting narrow view of common interest doctrine because "[c]ontrolling Eighth Circuit law on the common interest doctrine is broader in scope than what some other circuits have adopted," and finding doctrine applicable where "the parties at least shared a strategic common

---

[3] The Restatement's description of the common interest doctrine and related commentary are now found at Restatement (Third) of the Law Governing Lawyers § 76, cmt. e (2000). The Restatement's formulation is unchanged from the version cited with approval by the Eighth Circuit in *In re Grand Jury Subpoena*.

interest—if not a legal common interest") (citations omitted); *Safco Prods. Co. v. Welcom Prods., Inc.*, No. 8-cv-4918 (JRT/JJG), 2010 WL 11252007, at *3 (D. Minn. Feb. 10, 2010) (rejecting narrow view of common interest doctrine because "the applicable law here is that of the Eighth Circuit" that the doctrine applies where parties "have a shared legal, factual, or strategic interest"), and elsewhere in the Circuit, *see, e.g.*, *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 582–84 (D.S.D. 2006); *ContiTech USA, Inc. v. McLaughlin Freight Servs., Inc.*, No. 320-cv-0075 (SMR/SBJ), 2021 WL 6618846, at *1–3 (S.D. Iowa Nov. 24, 2021). The Court follows the Eighth Circuit's framework in its analysis here.

Suncall has advanced evidence which supports the view that it shared common legal, factual, or strategic interests with WD. First, Suncall correctly notes that HTI's lawsuit asserts that WD is the direct infringer of its patents, with Suncall as the indirect infringer. Suncall also asserted in its amended answer to HTI's complaint that it made suspension parts "per specification" for WD (Doc. 47 ¶ 10), something Suncall itself relied upon in moving to compel the production of documents and testimony from WD in a related action venued in the Northern District of California. (*See* Docs. 218, 218-1 at 8:17–19.) And finally, Suncall's counsel filed a declaration stating: (1) Suncall's outside counsel has corresponded with WD about this lawsuit "pursuant to a common interest agreement"; and (2) that communications between counsel for Suncall and counsel for WD were made pursuant to a shared understanding that they were privileged and confidential. (Doc. 190 at 2–5.)

7

HTI counters that there is no legal common interest here—WD has no legal exposure since HTI decided not to sue WD. *See Williams*, 2022 WL 17485550, at *3–4 (considering absence of litigation against third party as a factor in common-interest analysis). But as *In re Grand Jury Subpoena Duces Tecum* and other cases make clear, legal exposure in this case is not the sole touchstone of a common interest: parties must have a common interest in a litigated *or non-litigated matter*, and that interest may be legal, factual, or strategic. 112 F.3d at 922–23. And it takes no great logical leap to imagine that a party who is alleged to have directly infringed HTI's patents (WD) might have aligned interests with the indirect infringer (Suncall).

According to HTI, any supposed alignment between Suncall and WD is at most an abstract one, since "Suncall has indemnified WD for intellectual property infringement." (Doc. 174 at 6 (citation omitted).) According to HTI, there can be no commonality of interests between Suncall and WD in this case if WD has no real exposure due to indemnification. But even *with* indemnification, WD certainly has an interest in not being found to have infringed on HTI's patents (such as not being enjoined from using Suncall's allegedly-infringing products—relief HTI has asked for, *see* Doc. 8 at 34 ¶ B). But more importantly, HTI's argument fails as a matter of proof. The document which HTI cites for the proposition that Suncall indemnified WD against liability in this case says no such thing. Instead, it appears to be a 2005 agreement between Suncall and Hitachi Global Storage Technologies Japan, Ltd. ("Hitachi") (Doc. 177-7.) Despite its mountain of filings, HTI did nothing to attempt to orient the Court to this document, other than simply stating that it was "a document [WD] produced in this litigation." (Doc. 176 ¶ 10.) In the absence

8

of some evidence that WD is a successor in interest to Hitachi, let alone some indication that this nearly 18-year-old agreement remains in effect, the Court does not find it probative.

HTI also directs the Court to evidence that WD "refused Suncall's request for legal assistance in connection to patent litigation," suggesting this means WD and Suncall are not aligned in intellectual property matters. (Doc. 174 at 6 (citations omitted).) But at the hearing on this motion, HTI clarified that the cited statement related to a *different* lawsuit— one that HTI is not involved in and is venued in Japan. (Doc. 226 at 5:14–18.) To suggest that WD's refusal to help Suncall in an entirely separate case means that Suncall and WD are globally (quite literally) misaligned in all intellectual property matters stretches logic beyond its elasticity. The question before the Court is whether Suncall and WD have a common interest—be it legal, factual, strategic, or some combination of them—in *this case*. The answer to that question is yes.

**B.     Suncall has not waived its privilege.**

HTI argues that even if the Court determines that Suncall and WD have a common interest, any privilege has been waived because Suncall has partially produced its communications with WD. Specifically, Suncall has produced documents which, according to HTI, show that WD refused to help Suncall with litigation, and also asked that Suncall resolve this case before WD executes a new supply agreement with Suncall. This, according to HTI, "constitutes a subject-matter waiver and precludes Suncall from withholding other such communications on the basis of privilege." (Doc. 174 at 12 (citation omitted).)

The Court does not find HTI's waiver argument persuasive. It is hard to conjure how Suncall's supposed disclosure of general statements from WD about litigation—not even clearly *this* litigation—has waived the privilege. *Compare Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, No. 14-cv-3103 (SRN/FLN), 2015 WL 9861106, at *5–8 (D. Minn. Oct. 5, 2015) (finding subject-matter waiver for information related to patents-in-suit based on disclosure of some otherwise-privileged documents for those same patents), *objections overruled*, 2016 WL 6774229 (D. Minn. Nov. 15, 2016). As Suncall suggests, the disclosed communications appear to be commercial in purpose. Beyond that, "[t]he purpose of the subject-matter waiver doctrine is 'to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice.'" *Shukh v. Seagate Tech., LLC*, 848 F. Supp. 2d 987, 990 (D. Minn. 2011) (quoting *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1303 (Fed. Cir. 2006)) (further citation omitted), *aff'd*, 872 F. Supp. 2d 851 (D. Minn. 2012). HTI makes no effort to suggest how the disclosure of general information suggesting WD is displeased with Suncall's patent litigation unfairly benefits Suncall.

HTI also asserts that Suncall has waived its privilege by failing to include the withheld communications with WD on its privilege log. Suncall disagrees, arguing that the parties have stipulated in their proposed scheduling order (Doc. 36-2 at 5)—as adopted by the Court's Pretrial Scheduling Order (Doc. 52)—that no post-litigation privileged communication and documents need to be logged.

Suncall is correct. According to the Court's Pretrial Scheduling Order, "any documents or communications created after the initiation of litigation on December 7,

10

202[1], need not be logged."[4] (Doc. 52 at 2.) HTI filed its complaint on December 7, 2021. (Doc. 1.) According to the declaration filed by Suncall's counsel, all withheld documents "post-date the filing of HTI's complaint." (Doc. 191 ¶ 3.) Not logging such communications is consistent with the parties' expectations and does not operate as a waiver of privilege.

II.  **SUNCALL'S MOTION TO COMPEL**

As set forth above, Suncall asks the Court to order HTI to provide fulsome responses to three of its interrogatories. Suncall's motion is denied in its entirety. The Court addresses each interrogatory in turn.

A.  **Suncall's request that HTI identify all products it has made, used, sold, offered for sale or import, or licensed that would be covered by the patents-in-suit is not sufficiently relevant and is not proportional under Rule 26.**

Suncall argues that HTI improperly limited the scope of its response on this subject to only those products that it claims Suncall has infringed. Suncall claims the broader scope of product identification it has requested is relevant for five reasons related to its licensing defense and to damages. The first reason is because it needs this information to determine whether Suncall's Supply Assurance Agreement with WD conferred a license to make such products. The second reason is because Suncall needs to know which of HTI's customer purchase orders with WD may have likewise conferred a license to make certain products. Third, identifying the number of covered products is necessary to determine the amount of

---

[4] The scheduling order uses the date "December 7, 2022," but by the context of the statement it is clear that this is a scrivener's error and intended to read "December 7, 2021." (*See, e.g.*, Doc. 36-2 at 5 (parties' stipulation that "any documents or communications created after the initiation of litigation on December 7, 2021, need not be logged").)

11

damages for the alleged infringement. Fourth, the damages HTI seeks predate its notice to Suncall of this lawsuit, and this puts at issue whether Suncall had sufficient notice provided by HTI's marking of products with its patent numbers before it filed its complaint. And fifth, if Suncall can demonstrate a product that HTI says it did not infringe is the same as one that HTI says it did infringe, or vice versa, this would be evidence that Suncall did not infringe.

HTI disagrees, arguing that it has developed over a hundred product families, and has not catalogued them according to which is covered by what patent, nor should it have to do so here for the convenience of Suncall. HTI claims it sued on particular products tied to particular patents, and it has fully answered based on its suit and the products at issue which are relevant to damages.

The Court finds Suncall's arguments unpersuasive. Fishing for product information that HTI claims is not at issue here because it might somehow be covered by a license or be relevant to damages related to a patent at issue is simply too far afield. Rule 26 governing discovery is broad, but courts should "remain reluctant to allow any party to 'roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, 187 F.R.D. 578, 589 (D. Minn. 1999) (quotation and citations omitted). To the extent there could be some marginal relevance to the evidence produced, it is far outweighed by the burden in the exercise of production. HTI indicated that responding to Suncall's request for just the two product lines at issue in this case took over 60 attorney-hours. (Doc. 226 at 47:16–18.) At the hearing on this matter, HTI's

counsel suggested there were no "economies of scale" in engaging in the same exercise for all the remaining 100-plus product families, and in fact it would likely take longer on average because counsel does not have the same familiarity with those other products. (*Id.* at 49:6–50:5.)

**B.     Suncall's request that HTI identify the contours of predecessor products to the patents-in-suit is not sufficiently relevant and is not proportional under Rule 26.**

Suncall asks the Court to order HTI to identify its products immediately preceding the invention of each patent-in-suit, and to identify the improvements claimed in each patent over the preceding product. According to Suncall, this request is relevant because it goes to the question of "what, if anything, did HTI really invent?" (Doc. 181 at 9.) Suncall's interrogatory sought this information for two years prior to each patent-in-suit, but has offered to narrow its request to a one-year period, or to only "the specific suspension design that was allegedly improved upon by each of HTI's respective patents." (*Id.*) Suncall argues that these facts are relevant to the development of the patented products at issue, are only available to HTI and its inventors, and thus, HTI should be compelled to respond.

HTI counters that it is the claims of the patents-in-suit that define the scope of HTI's invention, and that Suncall can determine this by reviewing the claims themselves as well as the publicly-available prior art. HTI also asserts that responding to this request would be unduly burdensome because it would have to conduct an invalidity analysis on each of its product lines, even if not at issue in the case. Claim by claim mapping of products to claims is not a light lift, it argues.

The Court agrees with HTI. The timing of claim charts and the mapping of claims to patents in patent cases—*early in discovery*—is an important consideration:

> Claim charts must contain enough information to provide notice of the party's infringement contentions and defenses, but they are not meant to be a substitute for discovery. "Claim charts must be sufficiently specific only 'to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement and raise a reasonable inference that all accused products infringe. Contentions that fail to provide defendant with fair notice of the plaintiff's infringement theories are insufficient and must be amended.'" *Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, No. 12–cv–2706 (MJD/LIB), 2014 WL 2945877 at *4 (D. Minn. Apr. 28, 2014) (quoting *Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, 12-cv-01971–CW (KAW), 2013 WL 3361241 (N.D. Cal. July 3, 2013)).
>
> Claim charts are "designed specifically to 'require parties to crystallize their theories of the case early in the litigation' so as to 'prevent the shifting sands approach to claim construction.'" *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, No. 95-cv-1987 (FMS), 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998)). Identifying and solidifying theories of liability early in a case through claim charts that clearly identify infringement contentions serves to focus discovery efficiently.
>
> Early disclosure of claim charts is generally meant to "make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *InterTrust Techs. Corp. v. Microsoft Corp.*, No. 01-cv-1640, 2003 WL 23120174, at *2 (N.D. Cal. Nov. 26, 2003).

*Stratasys, Inc. v. Microboards Tech. LLC*, No. 13-cv-3228 (DWF/TNL), 2015 WL 3869672, at *1–2 (D. Minn. June 23, 2015). Put simply, the question of "what, if anything, did HTI really invent?" was one for the claim-construction process, not the last moments of fact discovery.

Additionally, the Court finds merit in HTI's suggestion that requiring a claim by claim analysis would be disproportionately burdensome. "As a general matter, a patentee

14

is not required to provide a claim by claim analysis of its own products." *Beckman Coulter, Inc. v. Sysmex Am., Inc.*, No. 18-cv-6563 (MMR), 2019 WL 10250941, at *2 (N.D. Ill. Aug. 12, 2019); *see also Ecolab USA Inc. v. Diversey, Inc.,* No. 12-cv-1984 (SRN/FLN), 2015 WL 2353018, at *6 (D. Minn. May 15, 2015).

Attacking the validity of the underlying patent is a valid defense that Suncall is entitled to pursue. However, especially in light of the prior art and invalidity contention deadlines that have long passed, the Court is persuaded that the burden placed on HTI's response to this interrogatory—even as narrowed—is disproportionate to the needs of the case at this stage in the litigation.

C.  **Suncall's request for information which HTI provided to WD under the 2011 Supply Assurance Agreement is not sufficiently relevant and is not proportional under Rule 26.**

By way of interrogatory, Suncall has requested that HTI describe information that HTI provided to WD pursuant to a 2011 Supply Assurance Agreement. This Supply Assurance Agreement has been the subject of prior motion practice in this case. (*See* Docs. 98, 99, 122, 132, 144, 170, 199, 250.) Suncall moved to compel information related to this agreement (Doc. 98), which the Court granted in part, ordering HTI to produce supply assurance agreements it had with WD, as well as related documents (Docs. 132, 142, 170). The Court's order did not require HTI to produce any and all documents that may somehow affect certain conditions in the Supply Assurance Agreement, as such information would have (at best) marginal relevance. (Doc. 170.) The district court affirmed this ruling. (Doc. 250 at 16 ("Judge Micko's ruling that such an inquiry would be neither 'relevant [n]or proportional' is well-considered and not erroneous.").)

According to HTI, it has now produced "all agreements between HTI and WD from 2004 to present, as well as all communications between HTI and WD, found in a reasonable search of HTI's custodial and non-custodial files." (Doc. 195 at 20 (citation omitted).) According to HTI, based on its review, "none of the agreements or communications related to the patents-in-suit." (*Id.* (citation omitted).)

Suncall does not dispute HTI's production. Quite to the contrary, Suncall suggests that the production is so large that it would be tremendously burdensome for it to comb those documents, searching for its own answers. As such, Suncall persists in asking that HTI give a narrative response to its interrogatory request for information related to the 2011 Supply Assurance Agreement. But HTI has already provided the answer: it has searched all of its documents, and found nothing related to the patents-in-suit. *Cf. Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (Court generally accepts parties' representations regarding status of discovery production). And, since the documents have been produced, Suncall is free to conduct its own search. But there is no sound basis to require HTI to provide the narration that Suncall seeks.

## ORDER

Based on the above, as well as on the files, records, and proceedings in this case, **IT IS ORDERED** that:

1. Plaintiff's Motion to Compel Discovery (Doc. 172) is **DENIED**;

2. Defendant's Motion to Compel (Doc. 180) is **DENIED**; and

3. This Order shall be unsealed in its entirety 30 days from the date it is filed unless the parties show in writing good cause to keep specific portions of the Order under seal. Accordingly, the parties shall promptly meet and confer

regarding any redactions that may be required to protect confidential information referred to in this Order. They shall then file a joint letter and proposed redacted order within 14 days from the date this Order is filed, identifying with specificity the redactions they believe are required, if any, and the basis for those redactions.

DATED:  January 4, 2024    *s/Douglas L. Micko*
                           DOUGLAS L. MICKO
                           United States Magistrate Judge