UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Hutchinson Technology Incorporated, | Case No. 21-cv-2618 (SRN/DLM) |
| Plaintiff, | |
| v. | **SEALED ORDER** |
| Suncall Corporation, | |
| Defendant. | |

---

This matter is before the Court on the motion of Defendant Suncall Corporation ("Suncall") to amend the pleadings (Docs. 252 (motion), 254 (memorandum)), which Plaintiff Hutchinson Technology Incorporated ("HTI") opposes (Doc. 287 (memorandum)). For the reasons that follow, the Court grants Suncall's motion.

## BACKGROUND

HTI and Suncall are business competitors in the field of manufacturing hard disk drive components. (Doc. 8 ¶¶ 1, 2, 4, 9–10.) Both parties make and sell suspension assemblies to other companies, including Western Digital Corporation ("WD"). (Doc. 47 ¶ 9.) In December of 2021, HTI filed this lawsuit alleging Suncall had infringed on 16 of its patents. (*See generally* Doc. 8.) Suncall filed an answer denying HTI's claims and asserting counterclaims that HTI had infringed on two of Suncall's patents. (*See generally* Doc. 47.)[1]

---

[1] Subsequently the parties agreed to narrow their disputes by withdrawing claims related to some of each other's patents, leading to dismissal of claims related to six of HTI's patents and one of Suncall's patents. (Docs. 64, 82 (stipulations), 85 (Order).)

The Court issued the operative Pretrial Scheduling Order ("PTSO") in this matter on October 13, 2022. (Doc. 52.) According to that Order, the deadline for all motions to amend the pleadings was September 23, 2022. (*Id.* at 6.[2]) Relevant to the dispute here, the Court required the parties to exchange information about the disputed patents' prior art—materials the United States Patent and Trademark Office ("PTO") uses to determine whether an invention is novel and non-obvious and thus is patentable—during January and February of 2023. (*Id.* at 5–6.) Discovery closed on December 15, 2023. (*Id.* at 1.)

In a motion dated January 5, 2024, Suncall seeks to amend its pleadings by judicial consent under Federal Rule of Civil Procedure 15(a)(2). (Doc. 252.) This motion being untimely under the PTSO, Suncall also moves to amend the case's schedule to permit its late motion under Federal Rule of Civil Procedure 16(b)(4), a rule which requires both good cause and judicial consent to reopen a deadline. In its proposed Second Amended Answer and Affirmative Defenses and Counterclaims ("SAA") (Doc. 256 (Saros Decl.), Ex. 22 (redlined )), Suncall seeks to amend its pleadings to remove HTI's withdrawn claims (Counts 1, 3–5, and 9–10), and to add an equitable affirmative defense and counterclaims alleging that "United States Patent Nos. 10,916,265 [patenting the Astra POR PZT[3]] and 7,342,750 [patenting specific parts designed to use in disk drive suspension assemblies[4]]

---

[2] For ease of reference, all page citations to documents filed on the Court's electronic filing system will use the generated number on the top righthand corner rather than the original numbering within any given document.

[3] The Astra POR PZT is a piezoelectric actuator assembly, which means it is a device that converts electrical energy into mechanical motion or force using the piezoelectric effect. (Saros Decl., Ex. 22 ¶ 36.)

[4] For patent number 7,342,750 ("'750"), Suncall alleges HTI knew of two material and already existing patents—which Suncall refers to as the "Hernandez" (U.S. patent number

2

are unenforceable due to [HTI's] inequitable conduct." (*Id.* at 30, 32.) Suncall hopes to allege that HTI's named inventors and patent prosecuting attorneys of the patents—styled as patents '265 and '750 in shorthand—knew of material prior art that would show these patents were neither novel nor non-obvious, but intentionally deceived the PTO by failing to disclose this information under oath in violation of their duty of candor to the PTO. (*Id.* at 35 ¶¶ 10–11, 47, 50, 78.) As a result, Suncall hopes to seek a declaratory judgment of unenforceability for HTI's infringement violations for patents '265 and '750. (*Id.* at 38 ¶¶ 27–87, 49 ¶ D.)

Suncall argues that good cause supports its motion to amend the scheduling order to allow it to plead the proposed new allegations in its proposed SAA. Specifically, it claims that under the rules governing how a party should plead an inequitable conduct defense, discovery of particular facts is required before pleading this defense is allowed. Here, Suncall contends that until it had conducted the depositions of certain inventors that occurred on November 21, 28, and December 14 of 2023, it did not have the particularized factual basis required by the rules to plead an inequitable conduct defense. Thus, Suncall argues that no amount of diligence could have allowed it to meet the PTSO's September 23, 2022 deadline to move to amend the pleadings, and the Court should thus find Suncall's diligence provides good cause for its motion.

---

7,161,767) and "Even" (U.S. patent number 6,714,385)—whose disclosure would have shown that patent number '750 was neither novel nor non-obvious. (*Id.* ¶¶ 64, 66, 68, 70, 72–73.)

3

HTI opposes Suncall's motion, arguing that Suncall demonstrates no good cause to support reopening a long-passed amendment deadline. It claims that Suncall received disclosures about both prior art and HTI's patent inventors early in the case, and that Suncall should have served the additional discovery requests and conducted the depositions it thought it needed to support its alleged inequitable conduct defense earlier. At the very least, HTI argues, Suncall should have provided the Court with notice of its proposed equitable defense and sought to amend the PTSO before the deadline to move to amend the pleadings had passed.

HTI also contends that, even if the Court were to find good cause to reopen the deadline for motions to amend the pleadings, it should not grant Suncall's motion for three reasons: 1) because Suncall unduly delayed seeking such amendments; 2) because it will unfairly prejudice HTI to be forced to defend against new counterclaims after discovery has closed; and 3) because the proposed new allegations are futile where they could not survive a Rule 12(b)(6) motion to dismiss because Suncall does not plausibly allege the causation or intent elements required.

## ANALYSIS

Leave to amend a pleading is governed by Federal Rule of Civil Procedure 15(a)(2). Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and states that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the right to amend is not guaranteed. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). Courts may deny a party's motion for "undue delay, bad faith, or dilatory motive, repeated failure

4

to cure deficiencies by amendments [a court] previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)). Allegations in a proposed amended pleading are futile if "the amended [pleading] could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008) (citing *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007)).

Because the deadline to amend the pleadings in this matter was September 23, 2022, and because Suncall moved to amend on January 5, 2024, Suncall needs the Court to reopen this deadline under Rule 16 of the Federal Rules of Civil Procedure. *See Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019) ("Rule 16(b)(4) must be addressed first . . . . Rule 16 opens the door to Rule 15.") Rule 16 provides that a pretrial schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman*, 532 F.3d at 716 (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). Rule 16's good cause standard is "exacting" and "demands a demonstration that the existing schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, No. 97-cv-2185 (JRT/RLE), 187 F.R.D. 578, 581–82 (D. Minn. June 7, 1999) (quoting Fed. R. Civ. P. 16(b) and Fed. R. Civ. P. Advisory Committee Notes – 1983 Amendment). Determining whether good cause has been shown "falls within the magistrate judge's broad discretion." *Shank*, 329 F.R.D. 610, 614 (D. Minn. Jan. 7, 2019).

5

Although diligence is the primary factor courts look to when deciding whether good cause exists to reopen a deadline, courts are free to consider other factors such as prejudice to the nonmovant, the significance of the amendment, or other considerations. *See Income Allocation, LLC v. TruChoice Fin. Grp., LLC*, No. 22-cv-343 (JWB/JFD), 2023 WL 3916738, at *3 (D. Minn. June 9, 2023); *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)).

Additionally, under Local Rule 16.3 of this District, a movant who seeks to reopen a scheduling order deadline must also demonstrate "extraordinary circumstances." *See* D. Minn. LR 16.3(d) ("Except in extraordinary circumstances, before the passing of a deadline that a party moves to modify, the party must obtain a hearing date on the party's motion to modify the scheduling order. The hearing itself may take place after the deadline.").

### I. Suncall has shown the diligence and extraordinary circumstances that justify reopening the deadline for amended pleadings.

Suncall argues that the Court should find good cause and extraordinary circumstances support its request to reopen the deadline for motions to amend the pleadings. It contends that until it deposed several inventors late in 2023, it lacked confirmation of the evidence necessary to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard to allege an inequitable conduct defense.

Specifically, the law imposes equitable consequences on a patentholder who knowingly withholds material information in its patent application, barring that patentholder from enforcing a patent that they obtained in violation of their duty of candor, honesty, and good faith to the PTO. *See 3M Innovative Properties Co. v. Dupont Dow*

6

*Elastomers LLC*, 361 F. Supp. 2d 958, 976 (D. Minn. 2005) (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995)). This defense usually cannot be pled from the outset of a lawsuit because it requires that a party have an adequate evidentiary basis to support the allegation. *See Corning Inc. v. Wilson Wolf Mfg. Corp.*, 569 F. Supp. 3d 920, 927 (D. Minn. 2021) (discussing that inequitable conduct claims are subject to the higher pleading standard for fraud or mistake claims under Rule 9(b), which "requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.") (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009)). That evidentiary basis must support a plausible allegation that the opposing part knew that information material to its patent application existed at the time of its application, but withheld that information from the PTO intending to deceive that office to secure its patent. *Id.*

Suncall argues that throughout discovery it lacked an evidentiary basis to plead an inequitable conduct defense until it deposed three of HTI's inventors in November and December of 2023—Long Zhang, Chao-Hui Yang, and David Glaess—and discovered that the deponents knew of prior art for patents '265 and '750 material to their patentability but failed to disclose this information to the PTO. On this basis, Suncall argues Rule 9(b) is satisfied because, although no deponent provided a "smoking gun" admission it intended to deceive the PTO by such omissions, there is a reasonable inference of knowledge and intent contained in their testimony. Suncall claims that after completing the last of these three depositions on December 14, 2023, it promptly drafted its motion to amend and filed it soon after. Thus, it argues that its actions in moving to amend its proposed SAA without

7

delay as soon as it had adequate basis to allege an inequitable conduct defense have been both diligent and procedurally proper.

HTI counters that if Suncall had been diligent, it would have served discovery requests and sought depositions early enough in discovery to find support for amending its pleadings to add an inequitable conduct defense. Instead, HTI claims that Suncall unnecessarily waited until the end of discovery to seek such information, failed to identify the prior art at issue in its initial invalidity contentions, and allowed the deadline for motions to amend the pleadings to pass—despite several amendments to the PTSO—without alerting the Court it anticipated an extension to the deadline would be needed. As a result, HTI contends that the Court should find neither diligence nor extraordinary circumstances support Suncall's motion.

The Court disagrees and finds good cause and extraordinary circumstances support Suncall's request to reopen the deadline to move to amend its pleadings. In reaching this conclusion, the Court is persuaded by the reasoning set out in *Birchwood Lab'ys, Inc. v. Battenfeld Techs., Inc.*, 762 F. Supp. 2d 1152, 1155 (D. Minn. 2011). In *Birchwood*, the plaintiff belatedly moved to reopen the deadline to amend its pleadings to add a defense of inequitable conduct. *Id.* at 1154. The *Birchwood* court ruled that courts have often found good cause to belatedly amend the PTSO to add inequitable conduct claims. *Id.* at 1155 (citing *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 487–88 (D. Del. 2003) (finding that "good cause" to add inequitable conduct claims was shown after the expiration of a deadline to amend the pleadings by waiting until the moving party could confirm its suspicions of inequitable conduct by deposing the two inventors of the patent at issue);

8

*Douglas Press Inc. v. Gamco Int'l, Inc.*, No. 00-cv-7340 (JBZ), 2004 WL 2937392, at *1 (N.D. Ill. May 4, 2004) (stating that because of the seriousness of inequitable conduct claims and the high pleading requirements, it is proper for a party to wait beyond the scheduling deadline before asserting such claims); *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 989 F. Supp. 1237, 1247 (N.D. Cal. 1997) (finding that a defendant is entitled to confirm factual allegations through discovery before amending to include inequitable conduct defense)). The *Birchwood* court went on to find that, because of the heightened Rule 9(b) pleading requirements, it is not enough for a party who knows "*some* facts in support of its claim" to then file a preemptive inequitable conduct claim—the more prudent course is rather to wait and gather sufficient evidentiary support for its claim to meet the Rule 9(b) standard. *Id.* at 1156 (citations omitted).

Finding similar circumstances here, the Court concludes Suncall's belated motion to amend the PTSO is based on prudent conduct in waiting for a sufficient basis in fact to allege this equitable defense. The Court also finds Suncall acted with diligence in promptly filing its motion shortly after it had obtained evidence to meet the particularity pleading standard required. The Court thus concludes that Suncall has established good cause and extraordinary circumstances that justify reopening the PTSO's deadline to amend the pleadings.

In reaching this conclusion, the Court has considered HTI's arguments that Suncall's litigation strategy could have uncovered such alleged evidence sooner. However, the Court will not use the benefit of hindsight to fault Suncall's litigation strategy. The caselaw on this affirmative defense is clear that a party should not allege inequitable

9

conduct until it has sufficient supporting evidence; it does not mandate that such evidence must be sought and obtained early in the discovery period. *Accord Enzo*, 270 F. Supp. 2d at 489 ("the Court concludes that since the Rule 9(b) 'pleading with particularity' requirement is implicated with regard to an inequitable conduct claim, Digene was prudent and possibly required to confirm the factual allegations through discovery"); *Douglas Press*, 2004 WL 2937392, at *1 ("because of the seriousness of this fraud like allegation, some district courts have allowed litigants to amend their pleadings to assert an inequitable conduct defense where new or corroborating evidence is discovered"); *Advanced Cardiovascular*, 989 F. Supp. at 1247 (holding that the defendant "was entitled to confirm factual allegations before amending to include the inequitable conduct defense"). In other words, hindsight here cannot justify making caselaw that requires future litigants in similar circumstances to be extraordinarily prescient.

The Court likewise considered HTI's repeated concern that fact discovery has closed and it will thus not be able to conduct defensive discovery. (*See, e.g.*, Doc. 287 at 20 (distinguishing *Birchwood* and *Dynatemp Int'l, Inc. v. R421A, LLC*, 560 F. Supp. 3d 969, 2023 U.S. Dist. LEXIS 84067 (E.D.N.C. 2023) from this case because, unlike here, discovery was still open when the motions to amend were filed).) Yet Suncall seeks no reopening of discovery, and the Court finds HTI's protestations that it will need additional discovery unpersuasive where the patents implicated by Suncall's defense are HTI's own and the historical materials involved in the patents' prosecutions are—and have always been—at HTI's fingertips.

10

## II. The Court finds no undue delay by Suncall, unfair prejudice to HTI, or futility to the proposed amended pleadings that bars Suncall's proposed inequitable conduct claims.

Suncall next argues that the Court should grant its motion to amend under the reopened deadline in the PTSO. Suncall claims that under Rule 15, leave to amend should be freely given where Suncall has no dilatory motive in amending its answer. Suncall also argues that the Court should find that the unfair hardship to it were the Court to deny its motion and require it to forfeit its inequitable conduct defense outweighs any slight prejudice HTI may suffer.

HTI raises three arguments against such a course. First, HTI claims that Suncall unduly delayed in seeking to file this amended answer. However, the Court has already considered the timing of Suncall's request above and has found that Suncall acted with appropriate haste under the circumstances relating to the heightened pleading standard involved. Second, HTI claims it will suffer unfair prejudice because it will be too late to seek fact discovery related to new counterclaims where discovery has already closed. Yet the Court has already considered such claims of prejudice above as well and has found that HTI cannot persuasively claim it will be prejudiced by a lack of factual information that it has had in its possession since before it filed this lawsuit. This brings the Court to the third and final argument HTI raises against allowing this amendment: that Suncall's proposed inequitable conduct claims are futile because Suncall has not pled its claims such that they could survive a Rule 12(b)(6) motion.

A proposed claim (or counterclaim) is futile if it "could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *See Cornelia*, 519

11

F.3d at 782. Rule 12(b)(6) requires dismissal when a pleading fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The party asserting the claim or counterclaim need not plead "detailed factual allegations," but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. For a claim to be facially plausible, the party must allege "factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the Court accepts the pleader's factual allegations as true and views them most favorably for that party. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

An inequitable conduct claim requires that a pleading identify: (1) who made the material misrepresentations or omissions to the PTO; (2) what claims those misrepresentations or omissions affected and where; (3) why such misrepresentations or omissions were material; and (4) how the misrepresentations or omissions were done knowingly with the intent to deceive the PTO. *See Corning*, 569 F. Supp. 3d at 927. Thus, Suncall's motion to amend is futile if its proposed SAA fails to plausibly allege these elements.

The Court finds that Suncall has plausibly alleged these elements. As to Patent '265, Suncall alleges: the identities of the named co-inventors and prosecuting patent practitioners who made the material misrepresentation; that these applicants disclosed no prior art even though it existed, which included a material reference; that this omission would affect claim 1 of the patent describing its uniqueness and non-obviousness; that this

12

failure to disclose was material because material reference in this prior art was publicly available for more than a year before the patent and would have caused the patent to be rejected as unpatententable under federal law; that the applicants knew about the materiality of that prior art's concept because it was in the plan of record as prior art for '265 and had been included in presentations of the applicants' research; and that the prosecuting attorneys intentionally did not explore and file an Information Disclosure Statement for '265 that the PTO would use to identify prior art for an application. (Doc. 22 ¶¶ 29–49.) According to Suncall's proposed SAA, all of this, on information and belief, gives rise to a singular inference that the inventors who said nothing about prior art, and the patent prosecuting attorneys who asked no questions of the inventors about prior art, knowingly intended to decide the PTO concerning their '265 application by omitting application information that would have resulted in their application's denial by the PTO. (*Id.* ¶¶ 50–52.) Suncall makes similar allegations about the '750 patent concerning the who, what, where, why, and how of the alleged deception. (*Id.* ¶¶ 54–87.) Such pleadings are sufficient.

HTI disagrees, arguing that there should be nothing left to guesswork now that discovery has closed and thus that Suncall's pleadings must be supported by testable proof of the elements of its inequitable conduct claims. In other words, HTI would have the Court permit amendment to Defendant's pleadings only if Suncall will prevail on the merits of

13

the inequitable conduct claims that it seeks to add. If the Court were to do that merit analysis, HTI argues Suncall presents insufficient evidence of intent and materiality.[5]

The Court disagrees. First, caselaw expressly leaves room for some inferential guesswork in pleadings when alleging inequitable conduct claims, even though the claims are subject to a heightened pleading standard. *Corning*, 569 F. Supp. at 927. And second and perhaps even more importantly, HTI provides no authority for its claim that Suncall must prove up its claim by meeting a summary-judgment-like standard to be allowed a Rule 15 amendment to its pleadings. The standards in the caselaw that HTI suggests the Court use to weigh the futility of the proposed amendments are procedurally inapposite to a determination on a motion to amend. *See Belcher Pharms., LLC v. Hospira, Inc.*, 11 F.4th 1345, 1346 (Fed. Cir. 2021) ("This is an appeal from a decision of the U.S. District Court for the District of Delaware"); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1282 (Fed. Cir. 2011) ("Therasense, Inc. . . . and Abbott Laboratories (collectively, "Abbott") appeal [the district court's summary judgment finding and] judgment."). Moreover, HTI's presentation of competing analyses of evidence to negate Suncall's allegations is beside the point where the question is whether Suncall's proposed pleadings, viewed in the light most favorable to Suncall, can withstand a Rule 12(b)(6) motion. In short, there is a difference between proving allegations and adequately pleading plausible allegations, and HTI provides the Court with no legal authority to collapse the two. Thus,

---

[5] HTI also appears to suggest that Suncall's proposed amendments are futile for other reasons under Rule 12, and that it offers only a "summary argument regarding futility" in its memorandum. (Doc. 287 at 27–28 n.9.) However, the Court is unable to consider these arguments not presented in HTI's briefing on this motion.

14

the Court finds that Suncall's proposed pleadings in the SAA are not futile, although the Court makes no ruling on whether those allegations will succeed on the merits under a summary judgment standard or at trial.

## ORDER

Accordingly, pursuant to Federal Rule of Civil Procedure 15(a)(2), and based on the above, and on all the files, records, and proceedings in this action, **IT IS ORDERED** that:

1) Defendant Suncall Corporation's Motion to Amend the Pleadings (Doc. 252) is **GRANTED**;

2) Suncall must file a clean copy of its newly operative pleading within seven days of this Order; and

3) This Order shall be unsealed in its entirety 30 days from the date it is filed unless the parties show in writing good cause to keep specific portions of the Order under seal. Accordingly, the parties shall promptly meet and confer about any redactions that may be needed to protect confidential information referred to in this Order. They shall then file a joint letter and proposed redacted order within 14 days from the date this Order is filed, identifying with specificity the redactions they believe are required, if any, and the basis for those redactions.

Date: June 3, 2024         *s/Douglas L. Micko*
                            DOUGLAS L. MICKO
                            United States Magistrate Judge